Good morning, Your Honors. May it please the Court. My name is Rochelle Barber. I work for the Federal Defender's Office. I represent Appellant Jerry Pool in this case. I'd like to reserve five minutes for rebuttal. Your Honor, in this case, the Court must decide whether the Fourth Amendment prohibits the search of an arrestee without individualized suspicion to obtain his or her DNA for use in attempting to solve crimes. The issue is where the line must be drawn. In Kincaid and Creasle, this Court already resolved some of the issues related to this. It looked at the issue whether a supervised releasee could be DNA tested, and it found narrowly that a person on supervised release could be DNA tested. And it tied that decision squarely to the concerns of the government in supervising someone who has already been convicted. In this case, the government, well, Congress, has expanded the reach of that statute, and it now applies to all people arrested or facing charges. So it's clearly much broader than the concerns raised, and this Court must decide whether the government has the right to compel DNA from those people. But here, though, we really only have to decide whether someone that's arrested and indicted and being released, right? I mean, we don't have to decide the issue of whether someone that's arrested. Well, that is the precise issue with regard to Mr. Pool, but clearly the Court's decision in this case will have wide ramifications. But we could write the opinion very narrowly, or you couldn't write it very narrowly, but you could write it more narrowly to address only those cases where a probable cause determination has been made. The Court could, and it could follow the lower court, which said that probable cause determinations by a judge or grand jury allowed the testing to proceed. Clearly, any arrestee would have a probable cause determination. It's by the officer who's arresting the person. Well, it depends on the point at which the – no, not necessarily. I mean, you could have an arrest and a taking of DNA before a probable cause determination. That is part of the booking process. One would expect that for it to be a valid arrest, the officer would have had probable cause determination. But that issue's not before us. Correct, Your Honor. Correct, Your Honor. Here we actually have a grand jury indictment. Yes, Your Honor. All right. Yes, Your Honor. You have a grand jury indictment and an arrest regarding Mr. Pool. And so the issue really is line drawing. The lower court drew the line at that point and said, I'm not deciding whether this applies more broadly to arrestees or people just facing charges if there's no probable cause determination by a court or by the grand jury. But, however, that court did not base that on any prior decisions by this Court or by the Supreme Court. There's actually, I could find no – no – Well, this is – we're going to be the First Circuit court to weigh in. On this issue, yes, Your Honor. Yes. And you talk about wanting to apply the special needs test as opposed to the totality of the circumstances. I'm wondering why, though, since we are in the Ninth Circuit, why we're not compelled under a U.S. v. Creasel to apply the totality of the circumstances. Your Honor, I believe under Friedman and Scott, both of which found that the conditions were not appropriate, the court applied both. The government has disclaimed any interest in pursuing the special needs test, so I think that this Court does have to decide the totality of the circumstances, and I focused my reply brief on that issue. Okay. So turning to that test, the Court has to balance the interests of a person in this position against the intrusion of his or her privacy. Again, the issue is line drawing. So in Creasel and Kincaid, the person was convicted. They were also on supervised release. This Court found that a person in that position was subject to a higher intrusion of their or actually lower expectation on privacy and was subject to more governmental intrusion because they are supervised releasee, because they have high expectation sorry, because they have a high chance of recidivism. And that was very squarely presented to the Ninth Circuit in those cases. This is very different from someone who has been arrested even if it has been on probable cause found by a judge or grand jury. There's no expectation in that case of recidivism because that person is presumed innocent. They are similar in that way to place. Well, except this is someone that wants to get out, and so we have to balance the government's interest with the person's privacy, right? I mean, essentially. So the argument that I'm going to put to you, why doesn't the government have a very high interest in knowing who this person is and also whether they've committed other crimes? Well, the first interest is identification. And the government squarely argued that. When we're talking about identification, that's a slippery word. Identification can mean we want to make sure that Mr. Poole is Mr. Poole. It can also mean we want to find out if Mr. Poole has any other crimes out there that are unsolved that he's committed. We want to identify him as a suspect or a perpetrator. Well, but why wouldn't, if you're going to release someone into the community, why wouldn't you have an interest in knowing whether that person, what sort of danger they are to society? Well, and if this was a different law and it was applied differently, this could address that. But the fact is, with the amount of time that it takes for DNA results to come back, for the fact that a person is entitled to a bail hearing very early in the case, it's simply not possible for the government to receive those results and have them checked against every open case in that amount of time. Would you be making the same argument, necessarily, since he's going to be released, this would seem to be the time that you would get the DNA sample? Would you make the same argument if this were some kind of sexual, a man act case, or a felony on a reservation, or a sexual predator, or something like that? You mean if the charge was something along those lines? Yeah. Yeah. The indictment. The government can always ask for a warrant. And even, I believe, could ask for a discretionary condition of pretrial release in a specific case based on the facts of those cases. No, but if you wanted a warrant, you'd have to have some kind of probable cause or suspicion that there was, that there were other crimes, and that's pretty high standard. It is a high standard, Your Honor, and that's because this is such an intrusion. Are you saying to Judge Schroeder that there should not be a bright-line rule and that whether DNA testing pre-release is always a fact determination to be made on a case-by-case basis? I believe that this Court should not sanction broad DNA testing prior to conviction. But are you arguing for a case-by-case determination? Well — Or are you — what precisely is your position on that point? Just like with any other — That in some cases it is okay? Is that what you're saying? No. It's a search for evidence, Your Honor. Well, you're making a facial challenge here, though, I think, aren't you? You're not tying it to any specific fact. You're saying facially this is unconstitutional. Your Honor, it's unconstitutional as applied to Mr. Poole because there was no factual determination below. The Court never engaged in that, and the government never argued it. So you're making an as-applied challenge, not a facial challenge. Your Honor, I believe that this Court has to decide the case in front of it. I don't think I can make a challenge that would apply to all people facing charges, all people arrested, everyone who's contained in that statute. This Court has to look at this situation. And this mandatory condition was applied because it's mandatory under the Bail Reform Act. There was no attempt to say that based on the facts of Mr. Poole — The government didn't attempt to justify this on any kind of — at any time, I take it. No. No, exactly, Your Honor. Meaning any special need or justified by any special circumstance. Correct, Your Honor. Yes. Yes. So turning again to the issue of identification, which is what the government has based much of its argument on, but when we peel back those layers, we see that it's really about identifying an arrestee as a possible perpetrator of a possible uncharged crime or open crime in the community. There's the other issue, which Judge Callahan raised, which is simply, doesn't the government have an interest in identifying an arrestee? Again, DNA doesn't get us there. For example, in Mr. Poole's case, he has no prior convictions. His DNA is not in the system. Therefore, taking DNA at the time of arrest from someone who we think the government arrested the right person doesn't help them identify Mr. Poole as Mr. Poole. And in fact, in reviewing for this case, looking at the regulations, the government agents are precisely told not to take DNA from people who are already in the system. So it's not like fingerprints. It's not we need to match this up to something that's already in the system. To identify this person as the correct arrestee is purely identification for the sake of solving cases. So turning to, again, Mr. Poole's status, we have to talk about Friedman v. Butcher, because that's a case where this court found that the government could not compel DNA from an arrestee. That person was in custody, had a prior conviction, and was facing new charges. So one would think that a person in opposition would be in a much diminished status with regard to his expectation of privacy. And yet this court held that the government could not constitutionally search Mr. Friedman. Mr. Poole is – has higher expectations of privacy. He's not been convicted of anything. He is not in custody. And accordingly, the government may not – of the DNA, correct? Not that the DNA can be used for identification purposes. Is that – or are you even challenging that? Your Honor, we are challenging the taking of the DNA, the taking of bodily tissue as a search. That is the swab. The taking of it. But you seem to be saying that it can be used for more than just identification. And so you're saying that it can be used for other things. Well, Your Honor, we're challenging the taking, we're challenging the holding of a sample, meaning that the tissue remains in the government's hands, and we're challenging the profiling of that tissue and the repeated searches of that profile to attempt to connect a person with a crime. Well, when you get to those latter justifications or those latter concerns, it seems to me that that implicates other facts that aren't before us and other challenges that aren't before us. I don't believe so, Your Honor. I think the issue of whether the government can repeatedly search somebody's DNA to try to find them to be a suspect in an unsolved crime. That is one of the reasons that this is done, I take it, because it stays in a DNA data bank forever, doesn't it? This is the very reason that it's done. But is there any evidence in this record that it's being used for trait coding? For trait coding? Yes. No, but nothing about the statute story scheme stops that. I don't believe it's being used that way now. But if it were, that's a different case, right? No. Well, not necessarily a different case, but an independently sustainable case. No, Your Honor. The fact is this is an incredibly broad statute applying to a very broad group of people, providing the government with a lot of power to look at this material and decide what to do with it. And without ever letting, I take it, your client know what's being done with it. Correct, Your Honor. And I'll reserve the rest of my time. Thank you, Your Honor. May it please the Court, Sean Flynn on behalf of the United States. In 2004, this Court decided United States v. Kincaid and upheld the constitutionality of mandatory DNA fingerprinting of individuals convicted of any Federal felony pursuant to the Act. Somewhat prophetically, the majority en banc decision in Kincaid previewed the Fourth Amendment issue that is now before this Court five years later. And determining that the Act as it was then fashioned was reasonable under a totality of the circumstances, the Kincaid Court stated, The DNA profile derived from a defendant's sample establishes only a record of the defendant's identity, otherwise personal information in which the qualified offender can claim no right of privacy once lawfully convicted of a qualifying offense, indeed, once lawfully arrested and booked into State custody. Is this the plurality in Kincaid? Yes, Your Honor. Furthermore, as the magistrate in district courts below and this Court in Kincaid and Kreisel correctly recognized, the Act is structured so as to use a DNA fingerprint to glean a defendant's unique identity, nothing more. Well, I mean, why do you even need the DNA if the identity is the only reason? And why isn't a fingerprint enough? Why isn't a photograph enough? Your Honor, well, DNA, as the court in Bank – the Tenth Circuit in Banks decided, DNA is the most accurate method for identifying a person currently known to man. Of course, I'm not bound by that en banc decision sitting in the ninth. Of course not, Your Honor. All right. Well, actually, it wasn't a majority decision, so I'm not quite sure what we do with that language. Well, Your Honor, as this court – the DNA – whereas when someone puts their fingerprints on a glass and that fingerprint is there, DNA is available in a variety of contexts. If someone were to leave a piece of hair or other biometric information that were left at a crime scene, whether it's a piece of skin, up to ten cells now that can – it can be used to create a DNA profile. So it's – in that sense, it's – we don't – we live in a technological society. It's the logical progression from traditional fingerprinting, which this court has held in Rise v. Oregon, and which has been followed in Kincaid and Kreisel, that DNA is – But if you have a partial fingerprint from which DNA can be derived for testing – I'm not sure I follow, Your Honor. If you have a partial fingerprint from which DNA can be derived for testing – let's talk about the investigation of the crime scene. And you know the DNA, but you – and you know the identity of the defendant by any number of other independent means of deriving identification. You would concede that taking the DNA from the defendant at this stage would now allow a conviction by virtue of the DNA at the scene coupled with the DNA obtained at the time of bail posting, would you not? Your Honor, I would – I would stand – That's the concern I've got here, is that you do have in some cases a potential use of the DNA for conviction, or it would seem to be a violation of the Fifth Amendment. Well, Your Honor, one reason, one of the – in addition to identifying the – there's a host of reasons that the government has put forward in its submission. I guess what's your strongest reason for requiring a DNA sample from a defendant by pull at this time rather than after the entry of a plea or a guilty verdict? Your Honor, the government first and foremost has a compelling interest in solving crimes as promptly as possible and as accurately as possible. Indeed, in Kincaid, the majority of the – But the defendant has a correlative right not to convict himself or to have any evidence taken in – from the defendant in a constitutional violation to assist the government in proving the crime. Your Honor, the government would argue just as the defendant does not have a right to – just as force can be used to take his traditional fingerprint at the arrest and the booking stage because he has no right of privacy, no lawful right of privacy to that information, so, too, he does not have a right to the identity or the privacy – right of privacy to the identification information. I don't understand what you – I'm sorry. I don't understand what this phrase – what the word identification means in this context doesn't mean the same as, I see that picture, it matches that, seems to me to match that picture. You are getting every bit of genetic information available about somebody, and that seems like a lot more than identification, and you're keeping it for a very long time. Your Honor, to the extent you're – to the extent the Court is concerned about a possible revealing of genetic information, the act is – that is simply not the case. I'm concerned about it's not just revealing, it's use. It's – we don't – I don't know what you mean by identification. You know this – we know who the defendant is. I mean, he knows who he is. You know – there's no question about who he is, whether he's really somebody at – somebody else masquerading as this defendant. You know who he is. Well, Your Honor, the Court's – it's not that we're – in some instances, it may be that we're trying to identify that some – that individual person. Someone who's committed a crime has every interest in his – Do you want to know whether he's committed a crime in the past? That's one of the reasons, Your Honor. One of the compelling reasons, as the Supreme Court of Virginia has recognized in upholding its own statute designed to take the DNA of arrestees, is that the magistrate courts and the district courts have a compelling interest in knowing whether this individual has committed other crimes and whether they can be released safely. We'll do away with the Fourth Amendment if we – if you have a compelling interest in solving crime. And the Fifth Amendment. Your Honor, the DNA fingerprint that is taken from the DNA sample shows – it shows it's 13 core loci markers, just like on a fingerprint. Look, we all know how DNA works. Let me just ask you this, because I thought your strongest argument, and the one that had been causing me concern, is the safety of the community, and that maybe by taking the DNA, if it matched a known sexual offender, for example, or a – a matched criminal in a murder case, that now releasing the defendant into the community would cause concern that could be mitigated or evisciated by not allowing the evidence – by not – by not allowing the defendant to go – to be free at all. That's right, Your Honor. And I thought – but when you start changing the focus from that to we need evidence to prove crimes, and therefore we should take DNA, you just leave me in a – in a constitutionally conflicted state. Your Honor, certainly there are other – there are a multitude of compelling reasons why DNA – we should be able to take the DNA fingerprint of someone who's – there's been a probable cause of termination made that they've committed a felony. And one of those, as you point out, Your Honor, is to ensure that the individual who's being arrested can be safely released to the community. Are you suggesting that you do a test, that you could get the results and do the check of all the DNA of everyone who has committed a crime within the time that – from the time that – before he's released? That is the goal, Your Honor, and that's something that we – Is that – is that what – are you saying that that's what's being done? Yes, Your Honor. We are at the early stage – the FBI is at the early stages of implementing this process, but it has – it is instituting a significantly increased laboratory capacity expansion to test up to 500,000 arrestees on an annual basis, making it possible to being able to – eventually being able to test individuals quickly and meet – currently we estimate about 140,000 individuals are arrested per year. And with the increased laboratory expansion, we'll be able to get a very quick – But that's not what's going to be done for this defendant, is it? I mean, that might be a different case in the future. Well, Your Honor, I – Is this – is this, though, an as-applied challenge, or is it a – is it a facial challenge? Well, Your Honor, the arguments that the – that the defendant makes in his reply brief seem to smack of a facial challenge, in which they've raised the – the instances where those who are arrested for misdemeanors or arrested without a probable cause finding could be – are subject to the act. That's not the situation that's facing Mr. Poole, of course, who has been, as the money counts, involved in the exploitation of children. Do we need to – do we need to decide whether arresting someone is adequate, or do we just need to decide the facts of this particular case? Your Honor, this Court only needs to decide the facts of this case and affirm the district court decision, which found that a judicial or grand jury determination of probable cause is sufficient. It is, in fact, a watershed – But we still have – we still have to establish a bright-line rule as to that determination, and therefore, it does constitute a facial challenge to the statute to that extent. Your Honor, the government is only asking this Court to affirm the decision of the district court, which – I understand. I understand. These questions are better put to the – the defense counsel, but I think we tried that. Well, what's your strongest case to support? Because I haven't found any case in this circuit that upholds something like this with respect to someone who's not been convicted of a crime. Maybe I missed something. Well, Your Honor, it is the – that's because it's the first case coming forward. So what – Under this statute, right? That's correct, Your Honor. But the decision in Rise v. Oregon is, I believe, favorable for the government, which likened the – under an Oregon State statute, likened the taking of a DNA fingerprint to the taking of traditional fingerprints. The language of the Court is clear. Wait a second. Your answer to Judge Callahan, you said – you qualified the answer. You said under the statute. Are there reported cases regarding the taking of DNA in bail defendants that are not covered by the statute? Your Honor, not to my knowledge. So it's been sanctioned or not sanctioned. Not to the government's knowledge, Your Honor. But as I was – but I think the language from the – But we have held – we have considered DNA testing before. Yes, Your Honor. In the context of someone who's not convicted of a crime. Well, yes, Your Honor. And we have not held it – not upheld it. I'm sorry, Your Honor? We did not uphold it. Are you – Friedman v. Boucher? Well, Your Honor, I think Friedman is pretty well distinguishable from the case at bar. The court in Friedman held – the facts are fairly different. There, the court held that shackling a detainee and chaining him to a bench and forcibly opening his jaw to extract DNA without a warrant, without a court order, without pursuant to any statutory authority at all, was a violation of the Fourth Amendment. That is not the case here. But the holding of the case is not limited to those facts, correct? The holding is – it's important that we understand this because I think the Ninth Circuit existing jurisprudence may trump this panel's determination of the issue. Has the Ninth Circuit held that it is unconstitutional to take the DNA of defendants prior to conviction? Your Honor, that is not how I read Friedman v. Boucher. The holding of Friedman v. Boucher is exactly how I just read it. That the shackling of a detainee, the chaining him to a bench, and the forcibly opening of his jaw without a warrant, without a court order, and not pursuant to any statutory authority was a violation of the Fourth Amendment. The Friedman's – That's a 1983 case, isn't it? Yes, Your Honor, it is. It's a qualified immunity case. It's a civil case. And as Judge Callahan correctly pointed out in her dissent in Friedman, the panel majority's opinion is ultimately and directly at odds with the language from Kincaid, and it's the language I mentioned at the very beginning of my argument, that once an individual is lawfully arrested and based on probable cause, his identification becomes a matter of legitimate State interest, and he cannot claim any privacy in it. Your Honor, we're dealing with the totality of the circumstances analysis here. The courts in this circuit and every other circuit and the Supreme Court have correctly recognized that the intrusion caused by a buccal swab is severely minimal. That may be minimal, but the taking of this – that intrusion may be minimal, but the consequences are not. Your Honor, but there are – there are a number of protections that are built into the Act, which is – which makes the Act only to – its only purpose is to be used for identification, which this Court has set – this Court has held as much in Kincaid. Nothing has changed to the DNA fingerprint system, the CODIS system or the Act, since this Court's decision in Kincaid. It's the exact same system. Well, but the Court in Kincaid said that as currently structured and implemented, the DNA Act's compulsory profiling of qualified Federal offenders can only be described as minimally invasive, both in terms of bodily intrusion and the information it lawfully produces. Now, it seems to me that – that Kincaid does evolve the law and that that is the present statement of – of Ninth Circuit law over Judge Reinhart's dissent. It is, Your Honor. I see that I'm out of time. Thank you. Your Honors, the government seeks to DNA test people who are in a transient status. Within speedy trial time, a bit longer, people who are arrested and charged will either belong in one camp or the other. Either their case will be dismissed or they'll be acquitted, in which case they have the same expectation of privacy that we do, and their – and the government's disclaimed any interest in having their DNA in that database. Or they'll be convicted and they'll move into a different status where this Court has already found that they may constitutionally be DNA tested. So the government's interest is not just solving crimes. It's in trying to solve crimes earlier than they would have under this Court's prior jurisprudence. This Court, I think – Well, there are several issues in your question, Your Honor. First, in Kreisel and Kincaid, this Court found it to be minimally intrusive with respect to people who had already been to prison and who were on supervision, who had a number of conditions of their release that had to do with keeping them from recidivating and helping them rehabilitate. That is a very different posture or status than a person who is on pretrial release or, in fact, a pretrial – a person who has not been convicted at all. And that's the position that Mr. Poole is in. Regarding the issue of whether taking DNA is just like a fingerprint, we've argued at length in our briefs that it is not. For example, Judge Creschon in Pittsburgh just issued the Mitchell opinion. I cited that in my brief. And he found that the government's argument that DNA is just like a fingerprint is pure folly. He said that DNA necessarily contains much more private information. The mere taking of it intrudes into the body in the way that a fingerprint does not. Accordingly, it – But why doesn't Kincaid answer that aspect of the question? That is to say that if there are these other parade of horribles, I think that's the word that the opinion used. If there's other parade of horribles does happen, then that's – those are other cases that implicate independent claims and we'll have to deal with them as they  Well, both Kincaid and Kreisel were narrowly drawn to the issues of a person who is on supervised release. And they did say we're focusing on that right now. You have no greater rights than if you were in prison. Yes. And they recognized that if an arrestee comes along, if a private citizen comes along, that the court would have to take up the issue and the court has to do that now. I would like to speak just for a moment about Arizona v. Gantt, a very recent Supreme Court opinion that talks about car searches in the context of an arrestee. And to the extent that the Court wants to say that somehow an arrest removes so much of an expectation of privacy that pretty much any search goes or certainly a DNA search, intrusion into the body goes, you have to look at Gantt. And Gantt limited car searches in precisely the same issue. All right.  Your time has expired. Thank you, Your Honor. The matter just argued for submission, just argued is submitted. The Court appreciates the argument of counsel on both sides. And before hearing the next case, we will take a 10-minute recess.
judges: Lucero, Schroeder, Callahan